HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| UNITED TRANSPORTATION UNION, GENERAL COMMITTEE OF ADJUSTMENT GO-386, J.D. Fitzgerald, General Chairman,<br><br>Plaintiff,<br><br>v.<br><br>BURLINGTON NORTHERN SANTA FE RAILROAD COMPANY, a Delaware corporation; and LONGVIEW SWITCHING COMPANY, a Washington corporation,<br><br>Defendants. | Case No. C06-5441  RBL<br><br><br><br>ORDER GRANTING DEFENDANTS' MOTION TO DISMISS |

**1.    Background.**

This matter is before the court on the Defendants Burlington Northern's ("BNSF") and Longview Switching's ("LSC")  Motion to dismiss under Fed. R. Civ. P. 12(b)(1) and 12(b)(6).  Plaintiff United Transportation Union ("UTU") complains that BNSF violated or unilaterally altered the collective bargaining agreement between it and BNSF, when it implemented an "Overhead Trackage Rights Agreement" with LSC. LSC is owned by BNSF and another non-party railroad, Union Pacific ("UP").  The Agreement transferred operational responsibilities at a Longview switching yard from BNSF, UP, and LSC in an apparently inefficient sharing arrangement, to LSC alone.

BNSF and LCS informed the Surface Transportation Board ("STB") of the Agreement  and of thier position that the Agreement was exempt from the provisions of the Railway labor Act ("RLA"). The

1   Defendants argued that the Agreement should be implemented despite its impact on the collective bargaining
2   agreement and specifically its impact on union members.

3   The STB issued an Order acknowledging the Exemption in June, 2006. It stated that as a condition
4   of the exemption, any employees affected by the Agreement would be protected by the conditions imposed in
5   *Norfolk &Western Ry. Co. – Trackage Rights - BN,* 354 L.C.C. 605 (1978). These protections are apparently
6   common in such cases and are well known to the parties.

7   The Union petitioned the STB to stay the exemption, arguing in part that the STB was not authorized
8   to rule upon the Agreement. The STB denied the stay, finding that its approval was required. It also invited
9   UTU to file a subsequent petition to reject or revoke the notice of exemption.

10   UTU instead filed this lawsuit. UTU's complaint alleges the Defendants violated the RLA by
11   unilaterally imposing a change in working conditions, in the form of implementing the LSC Agreement, without
12   bargaining. They seek a Declaration that the Agreement's implementation violates the RLA, and injunctive
13   relief precluding them from doing so.

14   Defendants argue that the case should be dismissed on two primary grounds. First, they argue the
15   Complaint fails to state a claim under Rule 12(b)(6). They argue that the STB exemption "means that
16   defendants are permitted to implement the Agreement without regard to any restrictions that may otherwise
17   exist under any collective bargaining agreement."

18   Second, they argue that this court does not have subject matter jurisdiction over the dispute because
19   in order to find for the plaintiffs, this court would necessarily have to determine that the STB's exemption was
20   incorrect, which it cannot do.   Under 28 U.S.C. §2342(5), the Circuit Court of Appeals has "exclusive
21   jurisdiction" to hear appeals of "final orders of the STB."

22   Alternately, the Defendants argue that even if the STB's approval of the Agreement was not
23   dispositive, this court does not have subject matter jurisdiction to reach the merits of the UTU's claims because
24   they present a "minor dispute" which must be arbitrated pursuant to the RLA.

25   The UTU initially moves to strike all affidavits and exhibits, arguing that the court cannot consider
26   them in ruling under Rule 12(b)(6). It argues that the "facts" regarding the transaction and the Defendants'
27   intent in entering into it are disputed. If the court does consider the evidence, the UTU seeks to stay or
28   continue the "converted" summary judgment motion so that it may conduct discovery.

1    Substantively, the UTU argues that it does not in fact attack the STB decision, and that BNSF"s
2    jurisdictional argument therefore fails. Instead, it claims that it seeks to enforce BNSF's obligations under the
3    RLA (§2), and argues that those obligations (regarding bargaining and unilateral changes in working
4    conditions) are outside the STB's jurisdiction. It argues that only this court can resolve disputes over BNSF's
5    RLA §2 obligations.
6    The UTU also argues that the transfer of switching work from BNSF employees to LSC – which is a
7    BNFS subsidiary, and which UTU claims is BNSF's "alter ego" – is a sham transaction. It argues that the
8    transfer of switching to a "shell" company is based not on operating efficiencies but is instead anti-union. This,
9    it claims, is an independent basis for this court's jurisdiction under the RLA and *BNSF v. UTU*, 862 F.2d 1266
10   (7th Cir. 1988) ("*Winona Bridge*").
11   UTU argues, in a variety of ways, that this court (and not the STB) has jurisdiction to determine
12   whether any changes to the parties' CBA are necessary to implement the LCS agreement. It argues that the
13   consummation of the STB-approved agreement is not the same as the subsequent implementation of that
14   agreement; that the ICA and the RLA must be harmonized; and that the allegations of violations of RLA §2
15   is a major, not a minor dispute that can and must be resolved in court and not by arbitration.
16   The Defendants respond that *Winona Bridge* is no longer good law and is distinguishable, and that the
17   current state of the law in the Ninth Circuit is articulated in *RLEA v. Southern Pacific Railway*, 7 F.3d 902 (9th
18   Cir. 1993). Under that authority, they argue, the Ninth Circuit has held unambiguously that District Courts
19   do not have jurisdiction to hear claims regarding changes in labor agreements necessary to implement the ICC
20   [STB] approved transaction.
21   **2.    Discussion.**
22   As an initial matter, the Defendants' primary arguments arise under Fed.R.Civ.P.12(b)(1). The court
23   can consider matters outside the pleadings in evaluating its jurisdiction when challenged under this rule.
24   A complaint must be dismissed under Fed.R.Civ.P.12(b)(1) if, considering the factual allegations in the
25   light most favorable to the plaintiff, the action: (1) does not arise under the Constitution, laws, or treaties of
26   the United States, or does not fall within one of the other enumerated categories of Article III, Section 2, of
27   the Constitution; (2) is not a case or controversy within the meaning of the Constitution; or (3) is not one
28   described by any jurisdictional statute. *Baker v. Carr*, 369 U.S. 186, 198 (1962); *D.G. Rung Indus., Inc. v.*

*Tinnerman*, 626 F.Supp. 1062, 1063 (W.D. Wash. 1986); *see* 28 U.S.C. §§ 1331 (federal question jurisdiction) and 1346 (United States as a defendant). A federal court is presumed to lack subject matter jurisdiction until plaintiff establishes otherwise. *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375 (1994); *Stock West, Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989). Therefore, plaintiff bears the burden of proving the existence of subject matter jurisdiction. *Stock West*, 873 F.2d at 1225; *Thornhill Publishing Co., Inc. v. Gen'l Tel & Elect. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979).

When considering a motion to dismiss pursuant to Rule 12(b)(1), the court is not restricted to the face of the pleadings, but may review any evidence to resolve factual disputes concerning the existence of jurisdiction. *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988), *cert. denied*, 489 U.S. 1052 (1989); *Biotics Research Corp. v. Heckler*, 710 F.2d 1375, 1379 (9th Cir. 1983). A Rule 12(b)(1) motion can attack the substance of a complaint's jurisdictional allegations despite their formal sufficiency, and in so doing, may rely on affidavits or any other evidence properly before the court. *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir.1989), *cert. denied*, 493 U.S. 993, 110 S.Ct. 541 (1989); *see also Land v. Dollar*, 330 U.S. 731, 735 n. 4 (1947).

Thus, the court will not strike the Defendants' affidavits in connection with its evaluation of the Rule 12(b)(1) motion. Furthermore, the court is not relying on the Defendants' stated "intent" in reaching and implementing the agreement; it is relying on the facts related to the STB's approval and exemption.

It appears undisputed that the STB approved the BNSF/LSC agreement, and that in conjunction with that approval it exempted BNSF from otherwise applicable RLA limitations. Relying on *Norfolk & Western RR v. ATDA*, 499 U.S. 117 (1991), and subsequent cases, Defendants argue that labor disputes arising from the agreement's implementation are exclusively within the STB's jurisdiction, and, therefore, that this court does not have jurisdiction over them.

UTU responds by relying on *Winona Bridge* – a Seventh Circuit case which pre-dates *Norfolk & Western* and *Southern Pacific*. *Winona Bridge* involved BNSF's transfer of 1800 miles of trackage rights (from Wisconsin to Seattle) to a pre-existing, if largely inoperative, wholly owned subsidiary, Winona Bridge. Prior to the transfer, Winona Bridge had five employees and its assets consisted of an out of service bridge and 1.07 miles of track. The transfer followed a nation-wide attempt to bargain, and the failure of those efforts on the portion of BNSF track which was then transferred to Winona Bridge. *Winona Bridge* at 1269. The

1 Seventh Circuit found that the transfer was to a shell corporation for the sole purpose of avoiding bargaining
2 and an existing CBA, and characterized the subsequent dispute a major one under the RLA. It held that the
3 RLA and the ICA could be read together, and emphasized that it was the use of a shell corporation to abrogate
4 a collective bargaining agreement (and not the trackage rights agreement itself) that made the dispute a major
5 one. *Id.* at 1279.

6 *Winona Bridge* does not control for two reasons. First, it is entirely different factually. There, the
7 transferee was wholly owned and minute, and the subject of the transfer was BNSF's entire Northern Line.
8 Here, LSC (the transferee) is only 50% owned by BNSF, it is already engaged in the business of switching at
9 Longview, and the rights being transferred are not, as they were in *Winona Bridge,* many orders of magnitude
10 beyond what the transferee had prior to the transaction. The transfer in this case is not one to a shell or alter
11 ego corporation. Thus, the patently frivolous nature of the carrier's claim of contractual justification in
12 *Winona Bridge* are not present here. The dispute is therefore a minor one[1], even under *Winona Bridge.*

13 Secondly, the law has changed since the decision in *Winona Bridge.* Subsequent cases with facts more
14 akin to those in this case have established that labor disputes arising from the implementation of an STB-
15 approved transfer agreement are within the STB's exclusive jurisdiction. *See Southern Pacific* at 906:

> We are persuaded that because the ICC had exclusive authority to approve the Rio Grande merger and thereby exempt the Railroads from any procedural or substantive law which might otherwise impede that merger, it should have *exclusive authority* to clarify the scope of its own approval and the corresponding breadth of the exemption. Such orders would, of course, be subject to appellate review in the circuit court of appeals, under with the appropriate standard of deference to the agency decision. A contrary result would interfere with the *exclusive authority* that the statutory scheme confers upon the ICC in this area.

21 (Emphasis added). Other Circuits have, as the Defendants point out, arrived at the same conclusion. *See*, for
22 example, *Norfolk & W. Ry. Co. V. BRRS,* 164 F.3d 847 (4th Cir. 1998).

23 Thus, it is apparent that the labor dispute arising from the implementation of the agreement is subject
24 to the STB's exclusive jurisdiction. Plaintiff's attempt to characterize the dispute as one going to the heart of
25 the RLA does not change the analysis. As the Defendants point out, it would make no sense for the law to
26 grant the STB exclusive jurisdiction to exempt the carrier from the RLA and therefore permit departure from

---

[1] Because the court determines that it does not have jurisdiction to hear UTU's complaints about the implementation of the agreement, it does not reach the "major/minor dispute" issue, and does not rule on the Rule 12(b)(6) aspect of Defendants' Motion.

ORDER
Page - 5

the CBA, only to then allow the union to nevertheless preclude the agreement's implementation by arguing in court that the RLA applies and that the carrier is has unilaterally changed working conditions while refusing to bargain.  Such a result would also make the STB's "exclusive authority" meaningless.

For these reasons, the court agrees that the dispute and violations alleged in Plaintiff's complaint is within the STB's exclusive jurisdiction, and this court does not have jurisdiction over them.  Defendants' Rule 12(b)(1) Motion [Dkt.#12] is therefore GRANTED and this matter is DISMISSED.

DATED this 2nd day of January, 2007.

RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE